UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLAIRE E. KENNEDY,<br><br>      Plaintiff,<br><br>v.<br><br>SHELLPOINT MORTGAGE SERVICING and WILMINGTON SAVINGS FUND SOCIETY, FSB, not in its Individual Capacity, but Solely as Owner Trustee for CSMC 2018-RPL6 Trust,<br>      Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 24-cv-10763-ADB<br>*<br>*<br>*<br>*<br>* |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff Claire Kennedy ("Plaintiff" or "Kennedy") alleges that Wilmington Savings Fund, FSB, not in its individual capacity, but solely as owner-trustee for CSMC 2018-RPL6 ("Wilmington" or "Trustee") and Newrez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint," and with Wilmington, "Defendants") could not and cannot foreclose on her property. [ECF No. 11 ("Amended Complaint" or "Am. Compl.")]. Now pending before the Court is Defendants' Motion to Dismiss for failure to state a claim. [ECF No. 12 ("Motion" or "Mot.")]. For the reasons set forth below, the Motion is **GRANTED**.

I.    BACKGROUND

    A.    **Background Facts**

The following relevant facts are taken primarily from the Amended Complaint, the well-pleaded allegations of which the Court assumes to be true when considering a motion to dismiss. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

1.   The Property and the Mortgage

Kennedy owns the property at 158 Furnace Street, Marshfield, Massachusetts 02050 (the "Property"). [Am. Compl. ¶ 6]. The Property was originally granted to Kennedy on March 3, 1995. [Id. ¶ 10]. On January 13, 2006, she obtained a mortgage loan, secured by the Property, in the amount of $350,000 (the "Mortgage"). [Id. ¶ 11]. The Mortgage was recorded in the Plymouth Registry of Deeds on May 2, 2006, in Book 32086 at page 244, and it identified Pride Mortgage LLP as the lender and Mortgage Electronic Registration Systems ("MERS") as mortgagee. [Id.].

The Mortgage "was a standard form 'Freddie Mac/Fannie Mae' residential mortgage (a so-called GSE Uniform Mortgage), an instrument widely used across Massachusetts." [ECF No. 13-1 at 2]; Thompson v. JPMorgan Chase Bank, N.A., 158 N.E.3d 35, 38 (Mass. 2020) (citation omitted). Paragraph 22 of the Mortgage allows the lender to accelerate after the borrower's default and describes the notice that a lender must give regarding acceleration or any invocation of the statutory power of sale of the property. [ECF No. 13-1 at 13]. Paragraph 19 of the Mortgage provides for the borrower's right to reinstate after acceleration. [Id. at 11–12].

2.   Assignments of the Mortgage

On July 30, 2013, "MERS assigned the . . . Mortgage to Nationstar Mortgage LLC" ("Nationstar"), and the assignment "was recorded in the Plymouth County Registry of Deeds in Book 43458 at Page 345 on August 7, 2013" (the "July 2013 Assignment"). [Am. Compl. ¶ 17]; see also [ECF No. 13-2 at 2].

On December 17, 2018, Nationstar assigned the mortgage to "Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, As Owner Trustee On Behalf Of CSMC 2018-RPL6 Trust," and the assignment "was recorded in the Plymouth Registry of Deeds in Book 50633 at

Page 154 on December 17, 2018" (the "December 2018 Assignment"). [Am. Compl. ¶ 18]; see also [ECF No. 13-3 at 2].

On December 7, 2023, Nationstar once again assigned the Mortgage, this time to "Wilmington Savings Fund Society, FSB, not in its Individual Capacity, but Solely as Owner Trustee for CSMC 2018-RPL6 Trust," and the assignment "was recorded in the Plymouth Registry of Deeds in Book 58513 at Page 104 on December 7, 2023" (the "December 2023 Assignment"). [Am. Compl. ¶ 19]; see also [ECF No. 13-4 at 2]. The December 2023 Assignment was executed by Nationstar "by NewRez LLC F/K/A New Penn Financial LLC, D/B/A Shellpoint Mortgage Servicing. By its attorney in fact." [Am. Compl. ¶ 20].[1]

### 3. Default, Acceleration, and Notice

Plaintiff does not dispute or provide details regarding her failure to pay the Mortgage, but apparently events transpired that resulted in a claim for default. See [Am. Compl. ¶ 26]. On January 3, 2024, Defendants filed an action in the Massachusetts Land Court, the complaint for which included a "Mortgagee's Affidavit that purported to show that" Shellpoint sent Plaintiff a notice entitled "90-Day Right to Cure Your Mortgage Default," dated April 17, 2023 (the "Right to Cure Notice"). [Id. ¶¶ 28, 30]. Though Plaintiff references the Right to Cure Notice in the Amended Complaint, see [id.] and Defendants attach it to their Motion, see [ECF No. 13-5], she

---

[1] Plaintiff appears to allege that the limited power of attorney granted from Nationstar to NewRez LLC to execute the December 2023 Assignment was defective. See [Am. Compl. ¶¶ 20–24]. As discussed infra, the Court agrees with the parties that the December 2023 Assignment was void because Nationstar had previously assigned its interest in the Mortgage through the December 2018 Assignment. Because of this, the Court need not address the power of attorney issues.

3

alleges that Defendants did not send, and she did not receive, any such notice. [Am. Compl. ¶ 29].[2]

The Right to Cure Notice provided, in relevant part, that Plaintiff had failed to make certain monthly loan payments and that she had 90 days from the date of the notice to "pay the past due amount." [ECF No. 13-5 at 4]. Even if she failed to cure the default within the 90-day window, Plaintiff could "still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place." [Id. at 5]. Shellpoint "reserve[d] the right to accept or reject a partial payment of the total amount due." [Id. at 6].

On September 7, 2023, "Defendants sent Plaintiff a purported acceleration notice" (the "Acceleration Notice") stating that the Plaintiff "may have the right to reinstate the Mortgage." [Am. Compl. ¶ 33].[3]

B.  **Procedural History**

This case was originally filed in state court and removed to this Court on March 26, 2024. [ECF No. 1]. Plaintiff filed the operative Amended Complaint on May 8, 2024, [Am. Compl.],

---

[2] As part of their Motion, Defendants attach a certified copy of the Mortgagee's Affidavit filed with the Massachusetts Land Court, with two copies of the Right to Cure Notice appended: one sent via Certified Mail with Return Receipt on April 17, 2023, and the other sent by First Class Mail the same day. See [ECF No. 13-5]. The Court hereby takes judicial notice of the Right to Cure Notice. The language of the Right to Cure Notice is central to Plaintiff's claims, the Land Court filing is an official public record, and Plaintiff does not challenge the authenticity of the Right to Cure Notice or the Mortgagee Affidavit (despite maintaining she never received the notice). Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (explaining judicial notice appropriate for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint").

[3] It is unclear whether Plaintiff contests receiving the Acceleration Notice. [Am. Compl. ¶¶ 62–64 (alleging "[n]o default letter was sent to Plaintiff" and that "Plaintiff thus never received default *acceleration* notices") (emphasis added)]. As discussed infra, the Court does not view the Acceleration Notice as relevant to Plaintiff's potential relief in this action. As such, the Court need not take judicial notice of the document and instead relies on the allegations as pled in the Complaint regarding the Acceleration Notice.

which Defendants moved to dismiss on May 20, 2024, [Mot.].  Plaintiff opposed on May 28, 2024, [ECF No. 15 ("Opposition" or "Opp.")], and Defendants filed a reply in support of their motion on June 17, 2024, [ECF No. 19 ("Reply")].

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)).  This pleading standard requires "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

## III.   DISCUSSION

Plaintiff claims that Defendants have not complied with statutory power of sale requirements under Massachusetts law and breached a condition precedent to acceleration and foreclosure under the Mortgage.  [Am. Compl. ¶¶ 39–93].  As relevant here, she seeks (1) an injunction preventing the transfer of the Property on the ground that Wilmington is not a proper assignee of the Mortgage and thus cannot convey title, [id. ¶¶ 40, 47, 79–90], and (2) a declaratory judgment that the acceleration and attempted foreclosure of the Property were void for failure to comply with the terms of the Mortgage and Massachusetts statutes relating to notice and foreclosure, [id. ¶¶ 41–46, 51–78].

### A. Whether Wilmington Is the Mortgagee of Record

Defendants argue that "a clear chain of assignments connects [Wilmington] to the original mortgagee" because Wilmington "held the right to enforce the mortgage as of" the December 2018 Assignment. [Reply at 6]; see also [ECF No. 13 at 4–5]. They further contend that this remained unchanged by the December 2023 Assignment because, after the December 2018 Assignment, any "[s]ubsequent efforts by Nationstar, who by then did not hold the mortgage, to assign the mortgage . . . are 'legal nullities' with no effect, as it did not have any interest to assign." [Id.] Plaintiff does not challenge the efficacy of the December 2018 Assignment and in fact agrees with Defendants that the December 2023 Assignment "is void because Nationstar was not the holder of the Mortgage at the time of the assignment." [Am. Compl. ¶ 19]. She disputes, however, that Wilmington, or "Wilmington Savings Fund, FSB, not in its Individual Capacity, but Solely as Owner Trustee for CSMC 2018-RPL6," was the entity assigned the mortgage in the December 2018 Assignment. [Opp. at 2–3]. Rather, Plaintiff contends that the Mortgage was assigned at that time "to a differently named entity called Wilmington Savings Fund Society, FSB, *D/B/A Christiana Trust, as Owner Trustee* on Behalf of CSMC 2018-RPL6 Trust," [Id. at 2 (emphasis added)]. She contends instead that it was not until the void December 2023 Assignment that the appropriate entity seeking to enforce the Mortgage was assigned it. [Id.].

Defendants respond that the chain of title remains clear because "[o]nly two things distinguish the descriptions" of Wilmington in the December 2018 Assignment and in the Complaint: "(1) a d/b/a title—a fictitious corporate title Trustee uses—and (2) the language 'not in its Individual Capacity,' which appears redundant of the subsequent capacity language 'as Owner Trustee.'" [ECF No. 13 at 4–5]. They further argue that "[n]either distinction

substantively modifies the party being assigned the mortgage: Wilmington as Owner Trustee acting for CSMC 2018-RPL6 Trust." [Id. at 5]. The Court agrees. The December 2018 assignment makes clear that Wilmington Savings Fund Society as Owner Trustee of CSMC 2018-RPL6 was assigned the mortgage, [ECF No. 13-3 at 2], and, although phrased slightly differently, Wilmington Savings Fund Society as Owner Trustee of CSMC 2018-RPL6 initiated the proceedings to foreclose on Plaintiff, [ECF No. 13-5 at 2]. Plaintiff provides no compelling reason to conclude that the minor differences in the descriptions render these two entities distinct.[4]

In addition to arguing that a different entity was assigned the mortgage in December 2018, Plaintiff also contends that Massachusetts' "strict compliance" regime required Defendants "to explain the difference between the assignee of the [December 2018 Assignment] and the assignor of the [December 2023 Assignment] by way of a recorded Affidavit" pursuant to Mass. Gen. Laws 183, Section 5B. [Opp. at 16]. As discussed further infra, Massachusetts' "strict compliance" regime is applied in limited circumstances, and Plaintiffs do not point the Court to any authority (nor is the Court aware of any) that would require a title holder to explain away ineffective transfers recorded against its property. Without more, the latter, duplicative assignment by Nationstar, which Plaintiff agrees is a "legal nullity," does not cloud that title. O'Brien v. Wilmington Tr. Nat'l Ass'n, 506 F. Supp. 3d 82, 99 (D. Mass. 2020) (holding assignments by a party other than the mortgagee were void and did not cloud mortgagee's title).

---

[4] Additionally, and contrary to Plaintiff's assertions, [Opp. at 14], the December 2023 Assignment does not raise a question of fact regarding the appropriate assignee of the Mortgage given that it purported to assign the mortgage to the same entity which already held it.

7

### B. Whether Defendants Complied with Notice Requirements

Defendants next argue that they strictly complied with the foreclosure notice terms of the Mortgage and Massachusetts statutes. [ECF No. 13 at 5–8]. Specifically, Defendants argue that (1) Plaintiff received notice as required by the Mortgage and applicable law, and (2) the Right to Cure Notice contained the disclosures required by the Mortgage and applicable law. See [id.]

First, with respect to whether Plaintiff received proper notice of default, which Plaintiff claims she did not, see [Am. Compl. ¶ 26], Paragraph 22 of the Mortgage provides that "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in" the Mortgage, [ECF No. 13-1 at 13], and Paragraph 15 of the Mortgage states that

> [a]ll notices given by Borrower or Lender in connection with th[e Mortgage] must be in writing . . . [and] shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. . . . If any notice required by th[e Mortgage] is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under th[e Mortgage].

[id. at 11]. In turn, Mass. Gen. Laws ch. 244, § 35A provides that notice regarding the right to cure a default "shall be deemed to be delivered . . . (i) when delivered by hand to the mortgagor; or (ii) when sent by first class mail and certified mail or similar service by a private carrier to the mortgagor at the mortgagor's address last known to the mortgagee or anyone holding thereunder." Id.

Here, as described supra, an affidavit filed in Land Court and sworn under penalty of perjury attests that Shellpoint provided Plaintiff notice of her default and right to cure on April 17, 2023, by certified and regular mail, and that affidavit further attaches receipts from the mailings. See [ECF No. 13-5]. On this record, the Court concludes that the Right to Cure Notice was provided to Plaintiff as required under the Mortgage and § 35A.

Beyond claiming that she did not receive the notice, Plaintiff additionally alleges that the Right to Cure Notice is defective under the terms of the Mortgage (namely, Paragraphs 19 and 22) and applicable Massachusetts law because it contained "ambiguous and unnecessary language" that was "contrary to, water[ed] down and infringe[d] upon [her] unequivocal right to reinstate the [M]ortgage by paying less [than] the accelerated amount 'anytime' before the foreclosure." [Am. Compl. ¶¶ 31–32, 34–35]. Specifically, Plaintiff argues that the language in the Right to Cure alerting her that "Shellpoint Mortgage Servicing reserves the right to accept or reject a partial payment of the total amount due without waiving its right to proceed with foreclosure" renders the Right to Cure Notice misleading because the phrase "total amount due" could refer to the accelerated amount rather than the "total past due" amount. [Opp. at 3, 5–7]; see also [Am. Compl. ¶¶ 30–32].

Under Massachusetts law, a foreclosing mortgagee does not need separate judicial authorization if the "mortgage itself gives the mortgagee a power of sale and includes by reference the statutory power." Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213, 1218 (Mass. 2015). A mortgagee can exercise that "statutory power of sale" by "complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale." Mass. Gen. Laws. ch. 183, § 21. Lenders foreclosing under the statutory power of sale must adhere to the terms of the mortgage "strictly," including its notice-of-default provisions. Pinti, 33 N.E.3d at 1218 (quoting U.S. Bank Nat. Ass'n v. Ibanez, 941 N.E.2d 40, 49–50 (Mass. 2011)); id. at 1224.

"On top of the terms of the mortgage, Massachusetts law establishes its own right-to-cure notice requirements." O'Brien v. Nationstar Mortg. LLC, No. 23-cv-10774, 2023 WL 5438792, at *2 (D. Mass. July 25, 2023) (citing Mass. Gen. Law. ch. 244, § 35A), appeal dismissed, No.

9

23-1686, 2024 WL 3927001 (1st Cir. May 29, 2024). "Among other provisions, the law requires a lender to give a borrower notice of their right to cure their default, the amount owed, the date before which the borrower must cure, and that failure to cure may result in acceleration and foreclosure." Id. "To comply with § 35A, the Division of Banks 'has issued regulations specifying the precise form that this notice must take; a foreclosing mortgagor may not alter the notice.'" Davalos v. HSBC Bank USA, Nat'l Ass'n, No. 23-cv-10270, 2023 WL 3984832, at *3 (D. Mass. June 13, 2023) (quoting Thompson, 158 N.E.3d at 39). The strict-compliance standard that applies to the terms contained in the mortgage itself, however, does not apply to the provisions of § 35A. See U.S. Bank Nat'l Ass'n v. Schumacher, 5 N.E.3d 882, 888–90 (Mass. 2014). "Taken together, a party seeking to foreclose can satisfy its obligations under Massachusetts law by sending a 'hybrid notice' that complies 'strictly' with the terms of the mortgage, and at the same time complies with 35A's 'lesser requirements.'" O'Brien, 2023 WL 5438792, at *2 (citing Thompson, 158 N.E.3d at 41 n.7).

Even assuming that it was a hybrid notice requiring strict compliance with the Mortgage,[5] the Right to Cure Notice provided all information required by Paragraph 22, which requires that:

---

[5] Plaintiff alleges that the Right to Cure Notice was a "hybrid notice" requiring strict compliance. [Am. Compl. ¶ 28]. Given that it does not alter the disposition, for purposes of this motion to dismiss, the Court credits Plaintiff's allegation that the notice was hybrid. That said, nothing in the notice supports that allegation, and, if required to address the issue, the Court would be inclined to agree with the reasoning in Davalos, where the Court found that a substantially similar notice was not hybrid for four reasons. 2023 WL 3984832, at *3. First, the Right to Cure Notice is "entitled '90 Day Right to Cure Your Mortgage Default,' not 'Notice of Default' or 'Default Notice.'" Id.; [ECF No. 13-5 at 4]. Second, the Right to Cure Notice "does not purport to be sent pursuant to Paragraph 22 and concerns neither the power of sale nor any action that must be taken in connection with foreclosure." Davalos, 2023 WL 3984832, at *3 (internal quotation omitted); see [ECF No. 13-5]. Third, "it is uncontested that the [Right to Cure] Notice follows the required language issued by the Division of Banks for mortgagees to include in a § 35A notice." Davalos, 2023 WL 3984832, at *3 (internal quotation omitted); compare [ECF No. 13-5] with 209 C.M.R. § 56.04. Fourth, the Right to Cure Notice does "not indicate the loan

> The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

[ECF No. 13-1 at 13]. The Right to Cure Notice provided that Plaintiff was in default, [ECF No. 13-5 at 4], that the default could be cured by paying the past due amount within 90 days, [id.], that a failure to do so could result in acceleration, [id. at 6], and that Plaintiff had a right to reinstate the loan after acceleration, [id.]. See Davalos, 2023 WL 3984832, at *4 ("A hybrid notice with nearly identical language was found to be in strict compliance with this regulatory scheme."). [6]

Perhaps recognizing this, Plaintiff's argument hinges not on any information allegedly missing from the notice but instead on whether the additional, unrequired language regarding Shellpoint's right to accept or reject partial payment of the "total amount due" renders the Right to Cure Notice so misleading as to *negate* strict compliance. [Opp. at 8–14]. Multiple sessions of this court have rejected this argument (brought by Plaintiff's counsel) in the context of

---

was being accelerated," and instead informed Plaintiff only that "the past-due amounts were owed." Davalos, 2023 WL 3984832, at *3; [ECF No. 13-5 at 4].

[6] Plaintiff appears to (briefly) argue that the Right to Cure Notice does not strictly comply with her right under the Mortgage to reinstate the Mortgage after acceleration, which she contends stems from Paragraph 22. [Opp. at 8–9]. As explained above, the only language in Paragraph 22 regarding acceleration, and thus requiring strict compliance, is that "[t]he notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale," [ECF No. 13-1 at 13], which was included and strictly complied with in the Right to Cure Notice, [ECF No. 13-5 at 6]. Although it is true that "additional language can render an otherwise compliant notice inaccurate or misleading," this Court does not find that the relevant language here renders the notice "either ambiguous or contradictory." Davalos, 2023 WL 3984832, at *4.

11

materially identical default notices. See, e.g., O'Brien, 2023 WL 5438792, at *3; Davalos, 2023 WL 3984832, at *3 (collecting cases). For instance, as here, the plaintiff in Davalos alleged that the default notice he received was not strictly compliant because, in pertinent part, it contained contradictory and misleading language — namely, it repeatedly stated that plaintiff "must pay the past amount due" but also cautioned that if the plaintiff submitted a payment "for less than the *total amount due* . . . this matter will not be resolved." 2023 WL 3984832, at *3 (emphasis added). Plaintiff argued that "the use of the phrase 'total amount due,' as opposed to 'past due amount,' [was] unclear and dilute[d] [his] unequivocal right to reinstate the mortgage after acceleration, by leaving him unsure of whether he [was] required to pay only a 'past due' partial reinstatement amount or the entire accelerated amount to reinstate the loan." Id. The court in that case rejected this argument on three grounds: (1) that such a notice was not a hybrid notice that required strict compliance, (2) even if the notice did require strict compliance, it met those requirements, and (3) the use of "total amount past due" language did not render the otherwise compliant language inaccurate or misleading. Id. at *3–4. The court in O'Brien concurred with this reasoning, concluding that a default notice which stated that "Mr. Cooper is not obligated to accept less than the full amount owed" was not misleading as to whether the plaintiff was required to pay the accelerated amount where "[a]t the time the notice was sent, [Plaintiff's] debt had not been accelerated, . . . the notice did not purport to accelerate it, [and t]he notice informed [Plaintiff] of her right to pay the 'past due amount' to cure her default." 2023 WL 5438792, at *3.

This Court agrees that the language at issue here regarding Shellpoint's right to accept partial payment of the "total amount due" does not negate its strict compliance under the terms of the Mortgage and Massachusetts law. See, e.g., O'Brien, 2023 WL 5438792, at *3; Davalos,

12

2023 WL 3984832, at *4.  The Right to Cure Notice informed Plaintiff of her right to pay the "past due amount" to cure her default, [ECF No. 13-5 at 4], and it warned that such a failure to cure "may result in acceleration," [id. at 6].  Shellpoint did not purport to accelerate the Mortgage at that time or try to collect on any amount other than the amount clearly identified at the outset as "past due."  [Id. at 4].  Thus, "[t]he meaning of the notice was plain," and made clear that "[t]he 'full amount owed' was the past-due amount, not an accelerated amount." O'Brien, 2023 WL 5438792, at *3.

Although not argued in her Opposition, Plaintiff's Amended Complaint also appears to allege that the Acceleration Notice, which included the language that Plaintiff "may have the right to reinstate the Mortgage," nullifies any prior accurate notice of said rights such that any subsequent acceleration, foreclosure, or sale is invalid.  [Am. Compl. ¶ 43].  In support, Plaintiff cites Federal National Mortgage Association v. Marroquin, 74 N.E.3d 592 (Mass. 2017). Marroquin, however, speaks only to the lender's obligation with respect to the notice of default, and not to any subsequent correspondence by the lender.  Id. at 598–99.  It does not offer a view on what language should or should not be included in a notice of acceleration.  Id.  Moreover, Plaintiff does not cite any legal authority suggesting that a foreclosure may be voided based on conditional language in a notice of acceleration that describes the borrower's rights to reinstate after acceleration or to assert the non-existence of default or any other defense to acceleration or sale.  See generally [Am. Compl.]; [Opp.].  Plaintiff similarly cites no case or statute requiring a lender to even send a notice of acceleration, and the First Circuit has held that the corresponding provision of the GSE Uniform Mortgage — paragraph 19, which advises the borrower of the conditions under which they can reinstate their mortgage after acceleration — "does not, on its

own, impose any notice requirements on [the lender]." Thompson v. JPMorgan Chase Bank, N.A., 982 F.3d 809, 812 (1st Cir. 2020).

## IV.     Conclusion

Accordingly, Defendants' Motion, [ECF No. 12], is **GRANTED**.

**SO ORDERED.**

March 11, 2025                                                      */s/ Allison D. Burroughs*
                                                                                    ALLISON D. BURROUGHS
                                                                                    U.S. DISTRICT JUDGE